By the Coübt.
Duer, J.
It is admitted that the fund, now in controversy, has arisen from the sale, by the consignees, of cottons belonging to the plaintiffs, and that the sum retained by the consignees is sufficient to cover all the advances made to *407 the plaintiffs, and' all necessary charges. The plaintiffs, therefore, as shippers and owners of the cottons, must be entitled to the surplus which they now claim, unless we shall be convinced that the whole proceeds of the cottons were so appropriated to the satisfaction of the sterling bills drawn by the defendants, which they have been compelled to pay, as to render it our duty to apply them, so far as we are enabled, to that purpose.
It is insisted, on the part of the defendants, that in giving their assistance to carry into execution the arrangement of the 14th of August, 1846, between Gower & Co. and the plaintiff, Dodge, they acted as the agents of Dodge, and through him, of the shippers to whom he made advances, and not as the agents of the consignees, Gower & Co.; that, consequently, the acceptance and payment of each bill drawn upon them by Dodge, in pursuance of the arrangement, ought to be considered as an advance made by them to the shippers of the cotton, against which the bill was drawn, upon the faith that the proceeds of the consignment should and would be applied to the satisfaction of the sterling bills, which they, the defendants, for their own reimbursement, were authorized to draw ; that they, therefore, acquired, in each case, an equitable lien upon the cotton shipped, and its proceeds in the hands of the consignees—a lien which, in the present case, has not been affected by the failure or the acts of the consignees, but which this court, so far as it has power, by awarding to them the payment of the fund, now under its control, is bound to enforce.
Those positions were rested, partly upon general principles of law, and partly upon the construction which the learned counsel for the defendants gave to the arrangement of the 14th of August, and to the subsequent acts and correspondence of Dodge.
We have examined, with attention, the numerous authorities, that were cited by the learned counsel for the defendants, but cannot perceive, that reasonably construed, they lend any countenance to the doctrine that they were alleged to establish. There is no case, in its material circumstances, resembling the present, in which a lien legal or equitable, has been held to exist: none in which an advance of moneys to the shipper of goods by a third person, not the consignee of the goods, nor having *408 any power of disposition or control in relation to them, has been held to create a lien, or to operate as ah equitable assignment, in his favor, without the further proof that such was, in reality, the agreement or understanding of the parties. The mere fact, that the moneys would not have been advanced, had not the shipment been made, has never been deemed sufficient, and we are therefore of opinion, that the claim of the defendants to the fund in controversy, unless it can be rested upon a positive contract, must be rejected. The defendants were not the consignees of the cotton, nor in any sense the factors of the owners and shippers. ' The cotton was never in their actual or constructive possession. It is true that the invoices and bills of lading, were transmitted to them, and were sent through them to the consignees, Gower & Co.; but they were not transmitted for the purpose, nor with the effect, of giving to them any power of disposition or control, in relation to the cotton, or its proceeds, but merely as evidence that the proper shipment had in fact been made, and that the limits which Dodge, as the agent of the consignees, in making,advances,-was bound to observe, had not been exceeded. Without this evidence, it is true, the defendants would not have accepted the bills of Dodge, for the plain reason that, unless this evidence was furnished, they had no authority to draw for their own reimbursement, upon the consignees, Gower & Co. These circumstances, however, by no means justify the inference, that by the understanding of the parties, the cotton and its proceeds were appropriated to the payment of the sterling bills, drawn by the defendants, since they are entirely consistent with the supposition that their sole reliance for the payment of those bills, was upon the personal responsibility of Gower & Co. They agreed to accept and pay the bills of Dodge, properly drawn, upon the assurance of Gower & Co., that the sterling bills drawn by them for their reimbursement, would be duly honored. It was, indeed, agreed, between the shippers of cotton, and the consignees, that all advances made to the former, together with commissions and charges, should be deducted from future sales, but' there was no privity whatever, between the shippers and the defendants, unless in particular cases, it was created by an express agreement. No such privity was contemplated by, or *409 resulted from the arrangement of the 14th of August, under which all the parties were acting. It may be, that the relation between the defendants and Gower & Co., was such as to make it the duty of the latter to apply the proceeds of the cotton to the satisfaction of the bills drawn upon them by the former; but if so, it only follows, that it is against the proceeds which remained in the hands of Gower. & Co., or their assignees, and which exceeded the amounts of the protested bills, and not against the surplus belonging to the shippers, that the defendants ought to have asserted their claim. The shippers. agreed that from the proceeds of the cotton, a sum sufficient to cover all the advances and charges for which they were liable to the consignees, should be retained by the latter, but they did not agree that the moneys so retained should be applied to the indemnity of the defendants, and that in the event of a misapplication, the surplus belonging to themselves, should be liable; yet', it is upon the supposition of a contract, of which there is no' evidence, and the existence of which we have no right to infer, that the claim' of the defendants, as now advanced, is mainly founded.
Nearly the whole argument, on the. part of the defendants, proceeded on the assumption that in accepting and paying the bills of Dodge, and in drawing for their reimbursement, they acted as the agents of the shippers of the cotton, and not of Gower & Co., the consignees. Even could we assent to this view of the relations of the parties, it is by no means a necessary consequence that the defendants acquired a lien which could give them a just claim to the surplus proceeds now in controversy, while, on the other hand, if this view is erroneous, the claim, unless it can be rested upon a positive contract, is manifestly groundless. It is manifestly groundless, if the defendants acted throughout merely as the disbursing agents of Gower & Co., under their instructions, for their accommodation, and looking to them alone for their compensation and indemnity; and that it was in this character they acted, and in this light alone, that their acts are to be viewed, we are entirely satisfied.
The circumstances that they were selected as agents by Dodge, and that their commissions, as such, were to be paid out of the *410 property shipped, we regard as wholly immaterial. Although selected by Dodge, it was not by his instructions that they were governed, nor for his benefit that they acted. In accepting and paying his bills they acted at the request, and for the accommodation of Gower & Co., to enable them to make the necessary advances to shippers, and their authority to draw for their reimbursement was not derived from Dodge, but solely from his and their principals.
As to their commissions they were fixed by agreement between them and the Gowers, who alone were personally liable to them for their payment. That they should be a charge upon the property consigned was a part of the contract, not between them, but between the consignees, and the shippers.
Such are our views of the relations between the shippers of cotton, the consignees, and the defendants, as they grew out of the arrangements of the 14th of August, and we are of opinion that there are no special circumstances, that distinguish the case and rights of the plaintiffs, from those of other shippers. Their property is not subject to the claim which is now urged, unless that of other shippers would have been equally liable.
We do not consider the letter of Dodge, of the 24th of April, ’47, as designed to vary, in any respect, the rights and liabilities of the parties under the arrangement of the 14th of August. The terms of the letter are easy to be reconciled with that construction of the arrangement which we have adopted, and whether Dodge has rendered himself personally liable to the defendants for the whole or any portion of the protested bills, is a question which, in this suit, we have no right to determine, and must therefore refuse to consider. This liability, were it established, could not operate as an equitable assignment of the property of the plaintiffs.
The plaintiffs, in our judgment, are entitled, in respect to the fund, to the decree which they ask.
As the suit, however, is, in a measure, amicable, the fund-having been transferred to this country, with the consent of the parties, in order that their rights might be here determined, the aggregate costs must be equally divided, and if, upon the division, an excess shall be found due to the plaintiffs, their judgment *411 against the defendants must be limited to that sum ; if the excess shall be in favor of the defendants, it must be deducted from, and paid to them out of the fund.
Decree modified accordingly.